## UNITED STATED POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF

|  |  |  |
|---|---|---|
| Marco J. Thomas,<br>Complainant, | Date: | October 17, 2005 |
| v. | Agency Case No. | 4K-220-0064-02 |
| John E. Potter,<br>Postmaster General,<br>U. S. Postal Service,<br>(Capital Metro Operations),<br>Agency, | Filed on: | May 31, 2002 |

### FINAL AGENCY DECISION

This is the Postal Service's **final agency decision** on the above-cited discrimination complaint. Complainant alleges discrimination on the bases of disability and reprisal when management subjected him to a hostile work environment when:

1. On March 16, 2002, he was instructed to case and deliver 13 feet of mail within 8 hours;

2. On March 16, 2002, his request for 1 hour of overtime was denied;

3. On March 15, 2002, he was issued a Letter of Warning;

4. He was charged leave without pay (LWOP) for the week of May 20 - 26, 2002;

5. He suffered stress that prevented him from returning to work through July 3, 2002;

6. On December 26, 2001 and January 31, 2002, he was placed on LWOP causing him the inability to pay his bills; and,

7. On August 1 - 3, 2002, he put in a leave slip for overtime and was denied and harassed.

**06 0075**



**FILED**

JAN 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Case No. 4K-220-0064-02 -- Marco J. Thomas                                    2

## CASE CHRONOLOGY

Complainant requested counseling on April 1, 2002, and ultimately sent via first class mail with a presumed 5-day delivery, a notice of right to file a formal EEO complaint on May 25, 2002. Complainant filed a formal EEO complaint on May 31, 2002. The Agency accepted Complainant's claim for investigation on June 21, 2002.    Complainant alleged a claim of discrimination based on mental disability (not specified) and retaliation (Prior EEO activity) when management harassed him: (1) on March 16, 2002, when he was instructed to case and deliver 13 feet of mail within 8 hours; (2) on March 16, 2002, when his request for 1 hour overtime was denied; and (3) on an unspecified date, when he was issued a letter of warning.

On August 9, 2002, the Complainant filed a second complaint of discrimination (Agency No. 4K-220-0087-02). On September 16, 2002, the additional claims were consolidated into 4K-220-0064-02, and the scope of the investigation included the following: Complainant alleged discrimination based on mental disability (Stress), and retaliation (Prior EEO Activity), when management subjected him to a hostile work environment when: (1) on March 16, 2002, he was instructed to case and deliver 13 feet of mail within 8 hours; (2) on March 16, 2002, his request for 1 hour of overtime was denied; (3) on March 15, 2002, he was issued a letter of Warning; (4) he was charged LWOP for the week of May 20 -26, 2002; (5) he suffered stress that prevented him from returning to work through July 3, 2002; (6) on December 26, 2001 and January 31, 2002, he was placed on LWOP causing him the inability to pay his bills; and (7) on August 1 - 3, 2002, he put in a leave slip for overtime and was denied and harassed by Supervisors Anthony Huntley and Lamont.

On October 18, 2002, the EEOC received a request from Complainant for a hearing in the above referenced complaint. On January 29, 2003, the EEOC ordered the Agency within 15 days from the date of the order, to provide the EEOC a copy of the complete file, including the report of investigation. An Equal Employment Opportunity Investigator completed the investigation of Complainant's formal EEO complaint on February 10, 2003, and the Agency forwarded a copy of the Investigative Report to Complainant and the EEOC by certified mail dated February 10, 2003.

On October 21, 2003, the agency served its first set of discovery requests on Complainant by facsimile. Complainant did not file a response, and on November 18, 2003, the agency filed a Motion to Compel. On December 1, 2003, Complainant filed deficient responses to the agency's discovery requests, and on December 2, 2003, moved for the Motion to compel to be found moot. On December 4, 2003, the agency's Motion to Compel was denied as moot, but subject to renewal if Complainant's discovery responses were inadequate. On December 12, 2003, the agency renewed its Motion to Compel, which Complainant opposed. On December 29, 2003, the Administrative Judge (AJ)

that the agency could issue a decision on the merits of the complaint (without a hearing). The agency was instructed by the Office of Federal Operations to issue a decision on the complaint within 60 days of the date the decision becomes final pursuant to 29 C.F.R. § 1614.110.

To assist the agency in proceeding, Complainant submitted a statement of facts with cites to the record. Complainant's *Motion for Leave to File Statement of Facts* was submitted on August 30, 2005.

## FACTUAL BACKGROUND

At the time the matters of this complaint arose, Complainant was employed as a City Letter Carrier, Arlington Main Post Office, Arlington, Virginia.

### 1) Disability Claim:

Complainant testified that his disability was stress, and that management was notified of his condition on March 12, 2002 via a fax from his doctor. Complainant stated that for a reasonable accommodation, his doctor requested that his tour of duty be limited to 8 hours. Complainant testified that his impairment is permanent. Complainant alleged that his disability caused or became a factor when management knew that the instruction they gave him on March 16, 2002 to case and deliver 13 feet of mail within 8 hours; denying him 1-hour overtime on March 15, 2002; issuing him a Letter of Warning on March 21, 2002; charging him LWOP for the week of May 20-26, 2002; suffering stress beginning in January 2002 that prevented him from returning to work through July 3, 2002; placing him on LWOP on December 26, 2001 and January 31, 2002; and denying him overtime on August 1, 2, and 3, 2001, all violated his medical restrictions. According to Complainant, this action on behalf of management was a *continuing violation of his medical restriction and was based upon management's pre-disposition and bias hostility towards him, and his participation in protected EEO and union activity. [ROI, Affidavit A]

*The Postal Service's "Legitimate Nondiscriminatory Business Reasons for Its Actions":*

### Management's Testimony

Anthony Huntley, Supervisor, Customer Services, Arlington Main Post Office, Arlington Main Post Office, Arlington, Virginia, testified that he became aware of Complainant's impairment on June 21, 2002 through a fax from Complainant's doctor's office. Supervisor Huntley testified that the fax only said that Complainant was under doctor's care, and made no mention of medical restrictions. Supervisor Huntley stated that whenever Complainant came to work, he was on a full duty status, that Complainant never requested a reasonable accommodation, and that Complainant was able to perform the

essential functions of his position as a City Letter Carrier. Supervisor Huntley testified that disability did not cause and was not a factor when Complainant was given instructions regarding the 13 feet of mail; when his overtime (auxiliary assistance) was denied on March 16, 2002; when he issued Complainant a Letter of Warning; when Complainant was charged LWOP for part of the week of May 20-26, 2002 rather than annual leave (prime vacation); when as a result, Complainant suffered stress that prevented him from returning to work through July 3, 2002, his doctor should answer this; causing him the inability to pay his bills; nor when on August 1, 2, and 3 he was denied overtime/auxiliary assistance. [ROI, Affidavit B]

Angus Lamar Autrey, Supervisor, Customer Services, Arlington Main Post Office, Arlington Main Post Office, Arlington, Virginia, testified that medical documentation was not provided to him from the Complainant regarding his impairment, and that he did not recall if Complainant requested a reasonable accommodation. Supervisor Autrey stated that Complainant was able to perform the essential functions of his position, and did not have an impairment that substantially limited his ability to perform a major life activity such as walking, working, caring for self. Supervisor Autrey testified that disability did not cause or was a factor when Complainant was given instructions regarding the 13 feet of mail; when his overtime (auxiliary assistance) was denied on March 16, 2002; when he issued Complainant a Letter of Warning; when Complainant was charged LWOP for part of the week of May 20-26, 2002 rather than annual leave (prime vacation); when as a result, Complainant suffered stress that prevented him from returning to work through July 3, 2002, his doctor should answer this; causing him the inability to pay his bills. [ROI, Affidavit C]

Ivy Cash, Manger, Customer Services, Arlington Main Post Office, Arlington Main Post Office, Arlington, Virginia, testified that he became aware of Complainant's impairment in June 2002 when Complainant submitted a letter from his doctor. Manager Cash stated that Complainant did not request a reasonable accommodation, and that the doctor's note only restricted Complainant from work and provided no explanation. Manager Cash testified Complainant was able to perform the essential functions of his position as a City Letter Carrier, and that that he doesn't know if Complainant had an impairment that substantially limited his ability to perform a major life activity such as walking, working, caring for self because it was never explained in any of the letters from his doctor. Manager Cash testified that disability was not a factor. [ROI, Affidavit D]

Leonard Napper, Postmaster, Arlington Main Post Office, Arlington, Virginia, testified that he was aware of the reported stress condition that Complainant's physician documented, however, Complainant did not request a reasonable accommodation, and he was not aware of an impairment that substantially limited Complainant's ability to perform a major life activity. [ROI, Affidavit E]

## 2) Disparate Treatment/Hostile Work Environment Claims

### Complainant's Testimony

ISSUE 1: Discrimination based on mental disability (Stress) and retaliation (Prior EEO Activity), when management subjected Complainant to a hostile work environment when on March 16, 2002, he was instructed to case and deliver 13 feet of mail within 8 hours.

### Complainant's Testimony

Complainant testified that Supervisors Anthony Huntley and Lamar Archer subjected him to a hostile work environment when Supervisor Archer increased his workload and instructed him to case and deliver 13 feet of mail within 8 hours, in violation of his 8-hour day medical restrictions. Complainant testified that his normal feet amount of mail for his route was 9.75. Complainant stated that he cased 13 feet of mail but did not deliver 13 feet of mail. Complainant testified that comparison employee Thomas Sutherland gets assistance every day, up to 1 1/2 hours as an accommodation, for his restriction that limits his work on an 8-hour day. [ROI, Affidavit A]

### The Postal Service's "Legitimate Nondiscriminatory Business Reasons for Its Actions":

### Management's Testimony

Anthony Huntley, Supervisor, Customer Services, testified that on March 16, 2002, Complainant was instructed to pull down all mail for his route, and that Complainant went out for delivery with exactly 13 feet of mail. Supervisor Huntley stated that Complainant's reference volume was 13 feet out the door and the caseable volume was 8.10 feet. Supervisor Huntley asserts that Complainant's route was not overburdened. Supervisor Huntley testified that Complainant called back to the station and stated he would not be able to make his 8-hour day because he could not make it. Supervisor Huntley states that he met Complainant and observed 2 feet (one letter tray) of mail in his vehicle, letters and flats merged, three (3) flat tubs remaining to be delivered to an entire building, and approximately 1 hour remaining. Supervisor Huntley testified that comparison employee Thomas Southard did not request auxiliary assistance on March 16, 2002 nor was he denied auxiliary assistance. He is a limited duty employee with a legitimate on the job injury. He is limited to walking certain terrain due to his condition. [ROI, Affidavit B]

ISSUE 2: Discrimination based on mental disability (Stress) and retaliation (Prior EEO Activity), when management subjected him to a hostile work environment when on March 16, 2002, his request for 1 hour of overtime was denied.

### Complainant's Testimony

Complainant stated that on March 16, 2002, he brought back 4 feet of undelivered mail, and submitted an overtime form, which was denied. Complainant stated his restrictions limited him to an 8-hour day, his route was overburdened, and he needed overtime assistance in order to comply with his medical restrictions. [ROI, Affidavit A]

### The Postal Service's "Legitimate Nondiscriminatory Business Reasons for Its Actions":

### Management's Testimony

Supervisor Huntley testified that Complainant submitted a Carrier Auxiliary Control, PS Form 3996, for overtime/auxiliary assistance which was disapproved. Supervisor Huntley testified that Complainant stated he needed overtime/assistance because he was over his reference volume, and he was leaving late. Supervisor Huntley denies that Complainant was over his reference volume. Supervisor Huntley testified that all First Class mail was called on time, which means Complainant had no reason for remaining in Office Time beyond his leave time. Also, Supervisor Huntley stated that all mails are counted by management at all times of the day collectively, and for each individual route. According to Supervisor Huntley, that is how management determines if a Carrier requires overtime or needs assistance. Once all is determined, the supervisor then initials or signs the PS Form 3996. Supervisor Huntley testified that every employee is to have an 8-hour day unless otherwise instructed by management, there are no provisions or regulations for denying overtime and management must authorize all overtime. Supervisor Huntley testified that he did not harass Complainant regarding his request for 1-hour auxiliary assistance, and Complainant did not inform him that he felt he was being harassed. [ROI, Affidavit B]

Supervisor Autrey, testified that 1-hour overtime assistance might be requested when a route is 4 feet over the reference volume of that route. According to Supervisor Autrey, supervisors can approve or disapprove overtime. Supervisor Autrey testified that he did not harass Complainant regarding his request for 1-hour auxiliary assistance, and Complainant did not inform him that he felt he was being harassed. Supervisor Autrey stated that Complainant did not request overtime, did not work overtime, and was not on the Overtime Desired List (ODL). Supervisor Autrey stated that Complainant requested street assistance because he was leaving late, and street assistance was granted. Supervisor Autrey testified that comparison employee, Thomas Southard, did not request overtime on March 16, 2002. Supervisor Autrey further testified that Mr. Southard was not on the ODL. [ROI, Affidavit C]

ISSUE 3: Discrimination based on mental disability (Stress) and retaliation (Prior EEO Activity), when management subjected him to a hostile work environment when on an unspecified date he was issued a Letter of Warning

### Complainant's Testimony

Complainant testified that Supervisor Huntley issued him a Letter of Warning dated March 20, 2002 for unsatisfactory performance/failure to follow instructions on March 16, 2002, even though he had been denied requested assistance on his overburdened route, skipped his lunch break and worked an extra 20 minutes. Complainant testified that comparison employee Thomas Sutherland was treated fair when the postal service provided him with ample assistance and never issued him a Letter of Warning or failed to provide an accommodation. Complainant alleged that Mr. Sutherland gets assistance every day, up to 1 1/2 hours as an accommodation, for his restriction that limits his work on an 8-hour day. [ROI, Affidavit A]

### The Postal Service's "Legitimate Nondiscriminatory Business Reasons for its Actions":

### Management's Testimony

Supervisor Huntley testified that on March 16, 2002, Complainant was instructed to pull down all mail for his route. He called back to the station and stated he wouldn't be able to make his 8-hour day because he couldn't make it. He met Complainant and observed 2 feet (one letter tray) of mail in his vehicle, letters and flats merged. Inside 2100 Lee Highway, he had 3 flat tubs remaining to be delivered to that entire building. He had approximately 1 hour, 30 minutes of mail left, and 2 hours, thirty minutes left on his tour of duty for that day. At 4:30 p.m. Complainant ended his tour and left 2 feet of mail (one letter tray) on the floor. When he questioned Complainant, he responded he did what he was told in the time that it took and that he followed instructions. Supervisor Huntley testified that he issued Complainant a Letter of Warning on March 21, 2002 for Unsatisfactory Attendance/Failure to Follow Instructions. Supervisor Huntley testified that he did not harass Complainant regarding the issuance of the Letter of Warning, and Complainant did not inform him that he felt he was being harassed. Supervisor Huntley testified that comparison employee Thomas Southard has not been issued a Letter of Warning. [ROI, Affidavit B]

ISSUE 4: Discrimination based on mental disability (Stress) and retaliation (Prior EEO Activity), when management subjected him to a hostile work environment when he was charged with LWOP for the week of May 20-26, 2002, rather than annual leave (prime vacation).

Case No. 4K-220-0064-02 -- Marco J. Thomas

## Complainant's Testimony

Complainant stated that he spoke with Manager Cash on May 21, 2002, and submitted a PS Form 3971 (Request for or Notification of Absence), on May 22 2002. Complainant contended that he had pre-selected annual leave for May 20-26, 2002, as his choice for Prime Vacation. Complainant stated that at the time of pre-selection, the Carriers were not required to submit a leave slip Complainant contended that he was entitled to leave on the basis of seniority, and management passed him over for a person of less seniority. Complainant stated that he had consistently taken this week for leave for the past 13 years, and that management's action violated his priority right to have his pre-selected leave granted. Complainant testified that he was subjected to a hostile work environment when Manager Cash informed him he would be placed on LWOP. At this time, he was out on sick leave related to aggravation of his pre-existing stress condition. He submitted medical documentation to support the leave request for that period. Complainant stated that he didn't know if the LWOP was changed at a later date to sick leave or annual leave. Complainant testified that comparison employees Thomas Sutherland, Demetrice Mundy and Elaine Collins were not placed on LWOP when they were out on sick leave. [ROI, Affidavit A]

## The Postal Service's "Legitimate Nondiscriminatory Business Reasons for its Actions":

### Management's Testimony

Supervisor Huntley testified that he did not charge Complainant LWOP for the week of May 20-26, 2002. Supervisor Huntley testified that while Complainant requested LWOP prior to dates in question, Prime Vacation was never approved for Complainant. However, Supervisor Huntley stated that when Complainant called on May 22, 2002, a decision was made to approve the annual leave for the dates from the time of the call-in by Complainant. Supervisor Huntley testified that Prime Vacation is selected by seniority during the month of February and February only. It was done by the NALC representative and management together. All Letter Carriers were informed that once selection commences, they are to have dates ready for their first choice. Once their first choice is made, it is final. If the Carrier does not have choices ready when his/her turn comes up, that person will be skipped and come back to for their second choice. Supervisor Huntley testified that Complainant was given his turn for first choice and after he chose, they moved onto other people with less seniority. Supervisor Huntley testified that "a couple of Carriers later", Complainant wanted to change his mind. Supervisor Huntley stated that Complainant was then reminded that his choice was final.     Accordingly, Supervisor Huntley further stated Complainant's submission of a PS Form 3971 (Request for or Notification of Absence), on May 22, 2002, would have been denied for untimeliness. Supervisor Huntley testified that comparison employees Thomas Southard, Demetrice Mundy and Elaine

Collins were not charged LWOP between January and August 2002. According to Supervisor Huntley, Demetrice Mundy and Elaine Collins are limited duty Letter Carriers who report to work with other limited duty personnel at 10:00 a.m. Supervisor Huntley testified that he did not harass Complainant regarding the LWOP for May 20-26, 2002, and Complainant did not inform him that he felt he was being harassed. [ROI, Affidavit B]

Ivy Cash, Manager, Customer Services, testified that Complainant was charged LWOP for Monday, May 20, 2002, due to his continuous LWOP status and because he did not have a PS Form 3971 on file for the week. Manager Cash testified that in February of each year, the supervisor and shop steward together go to each employee by seniority and request their first choice for prime time leave from senior employee down to junior employee. Then, they go back using the same process to obtain the employee's second choice. No one is missed because they are not there. The process is stopped until that person is contacted.   Manager Cash testified that Complainant's supervisor and shop steward called Complainant at home so he wouldn't be passed over because of his seniority. Manager Cash testified that initially, Complainant requested prime time leave for another week (he didn't recall the week). Manager Cash testified that Complainant submitted his PS Form 3971 for May 20-26, 2002, on May 22, 2002, and it was approved. Manager Cash stated that LWOP was not changed at a later date. Manager Cash testified that he did not harass Complainant regarding the LWOP for May 20-26, 2002. He further testified that Complainant did not inform him that he felt he was being harassed.    Manager Cash testified that: 1)Tom Southard, Demetrice Mundy and Elaine Collins are all on limited duty; 2) they were not charged LWOP between January and August 2002; 3) all the employees were treated fairly and equally; and 4) no one was treated differently. [ROI, Affidavit D]

ISSUE 5: Discrimination based on mental disability (Stress) and retaliation (Prior EEO Activity), when management subjected him to a hostile work environment when as a result, he suffered stress that prevented him from returning to work through July 3, 2002.

### Complainant's Testimony

Complainant testified that Manger Cash, Supervisor Huntley and Supervisor Autrey caused him to be stressful. He further testified that he was subjected to retaliation, harassment and the continuous charge of LWOP that caused him to constantly file grievances.    In addition, Complainant stated that he was overloaded with work and denied assistance for the workload not withstanding his work restrictions. Complainant stated that he started missing work beginning January 2002, when he was diagnosed with hypertension. Complainant testified that he informed the union and the Employee Assistance Program (EAP) that he had become stressed with the issue of LWOP. In February 2002, Complainant testified he was diagnosed as having toxic stress connected with work.    He

stated he was given a doctor's note to take off work for the period of February 28, 2002 - July 31, 2002, and that he submitted the medical documentation to support his absences. Complainant testified that Management did nothing when they were informed about the hostile work environment. Complainant testified that comparison employees Thomas Sutherland, Demetrice Mundy and Elaine Collins weren't harassed for charges with LWOP. [ROI, Affidavit A]

*The Postal Service's "Legitimate Nondiscriminatory Business Reasons for Its Actions":*

*Management's Testimony*

Supervisor Huntley testified that he was aware that Complainant was suffering stress that prevented him from returning to work through July 3, 2002. Supervisor Huntley stated that Complainant informed him that his doctor stated he was suffering from anxiety and tension related to job stress. [ROI, Affidavit B]

Supervisor Autrey testified that he supervised the Complainant from December 2001 through May 1, 2002, however, he was not aware that between January 2002 and August 2002, Complainant was suffering stress. [ROI, Affidavit C]

Manager Cash testified that Complainant started missing work in January 2002, and that he became aware that Complainant was suffering stress when he submitted documentation from his doctor dated June 21, 2002. Manager Cash stated that the doctor documented that Complainant's stress was due to the continued toxic stress of his work situation and he was unable to return to his job. Manager Cash testified that Complainant gave no reasons for his absences, and that normally, he would just call in and say, I'm sick and then, hang up. [ROI, Affidavit D]

Leonard Napper, Postmaster, testified that he was aware Complainant had submitted documentation from his physician stating he was suffering from stress that prevented him from returning to work. [ROI, Affidavit E]

ISSUE 6: Discrimination based on mental disability (Stress) and retaliation (Prior EEO Activity), when on December 26, 2001 and January 31, 2002, he was placed on LWOP causing him the inability to pay his bills; and,

*Complainant's Testimony*

Complainant testified that on December 26, 2001, Supervisor Huntley charged him LWOP causing him to be unable to pay his bills. Management provided no explanation for this incident. It took management a month to reimburse him 8 hours for this date. Postmaster Napper and Manager Cash guaranteed him that any incident of LWOP would not happen again. Complainant testified that he was charged LWOP again on January 31, 2002, and that he wrote to Postmaster

Napper on this matter but he did not respond.  Complainant states that he doesn't know if he was reimbursed for the LWOP charged on January 31, 2002. Complainant stated that he notified the Postmaster in writing requesting a resolution because he was not getting paid and because the LWOP charges were illegal.  Complainant testified that the Postmaster did not respond. Complainant testified that Supervisor Huntley retaliated by giving him a Letter of Warning for his absences, that management took no corrective action and the harassment continued.  Complainant testified that comparison employees Demetrice Mundy and Desta Beyene were out on extended absences and weren't charged LWOP. [ROI, Affidavit A]

*The Postal Service's "Legitimate Nondiscriminatory Business Reasons for Its Actions":*

### Management's Testimony

Supervisor Huntley testified that due to a management error, he charged Complainant LWOP on December 26, 2001. Supervisor Huntley explained that with any call-in the day before or after a holiday, the employee will be put into LWOP status until acceptable documentation (that says employee was incapacitated or unable to work) is brought in within 72 hours of return to work. If documentation is not provided, the LWOP stands.  Supervisor Huntley testified that when Complainant submitted a leave slip for annual leave, it was approved pending FMLA documentation, but was not noted on the schedule. Supervisor Huntley stated that a pay adjustment on January 25, 2002 was given to Complainant correcting this error.  In reference to the second incident of LWOP, Supervisor Huntley testified that on January 31, 2002, he charged Complainant 5 hours and 10 units of LWOP, and 2 hours and ninety units of unscheduled sick leave because Complainant did not call in until 5 hours and 10 units of that day. Supervisor Huntley states that Complainant should have called 1 hour prior to his reporting time, 7:00 a.m.  Supervisor Huntley does not recall doing a pay adjustment other than the pay adjustment given for LWOP charged for December 26, 2001.  Supervisor Huntley testified that comparison employee Demetrice Mundy was not charged LWOP between January and August 2002. Comparison employee Desta Beyene was on Continuation of Regular Pay (COP) with the Department of Labor and in some cases requested LWOP in advance. Supervisor Huntley testified that he did not harass Complainant regarding the LWOP for December 26, 2001 and January 31, 2002, and Complainant did not inform him that he felt he was being harassed. [ROI, Affidavit B]

Postmaster Napper testified that he received a letter from Complainant on January 22, 2002, requesting a meeting with him to discuss his absences from January 12-23, 2002.  Postmaster Napper stated that he met with Complainant on January 25, 2002 and asked him to give a summary of the events that brought him to this meeting.

Manager Cash also attended this meeting. Postmaster Napper testified that in this meeting, Complainant stated he had approved leave for December 26, 2002 that had been signed by another supervisor. Postmaster Napper testified that according to Supervisor Huntley, Complainant's name was posted on the schedule to work on December 26, 2002. Complainant was upset that he was charged LWOP.    Postmaster Napper testified that Supervisor Huntley had explained that he was unaware that Complainant was scheduled off. By the time he realized the mistake, the deadline for making a leave adjustment had passed. Postmaster Napper stated that he learned that although a pay adjustment had been done, Complainant had not yet received the amount in his pay check. Postmaster Napper advised Complainant that a pay advance would be issued to him that day, and Complainant was paid a salary advance on the afternoon of January 25, 2002. Postmaster Napper testified that he advised Complainant of his obligation to look at the schedule prior to leaving on December 21, 2001. Postmaster Napper asserted that when complainant learned he was not scheduled for annual leave, he should have brought this to his supervisor's attention.    Postmaster Napper testified that he did not charge Complainant LWOP on January 31, 2002. Postmaster Napper stated that it was reported that Complainant requested sick leave but had exhausted his earned accumulated balance. Postmaster Napper testified that he explained to Complainant that his attendance was of concern to him. Manager Cash referred Complainant to the Employee Assistance Program (EAP) as a result of Complainant's frequent episodes of absences. [ROI, Affidavit E]

ISSUE 7: Discrimination based on mental disability (Stress) and retaliation (Prior EEO Activity), when management subjected him to a hostile work environment when on August 1, 2, 3, 2002, he put in a leave slip for overtime and was denied and harassed by Supervisor Anthony Huntley and Supervisor Lamont.

## Complainant's Testimony

Complainant testified that he submitted requests for overtime on August 1, 2, and 3, 2002 which were denied without explanation. Complainant acknowledged that he was not on the Overtime Desired List during this quarter. Complainant stated that he needed the overtime because the route was overburdened and he was leaving late on each date due to the volume of mail to be worked. Complainant contended that he was subjected to harassment when Supervisors Huntley refused him overtime and yelled at him, each day, on the workroom floor in front of his co-workers. Complainant stated that he advised management verbally of the harassment, and that no corrective action was taken. Complainant testified that comparison employees Thomas Sutherland, Earl Barbee, Pat Threatt and Miklos Jessup were not yelled at on the workroom upon putting in a request for overtime. [ROI, Affidavit A]

*The Postal Service's "Legitimate Nondiscriminatory Business Reasons for its Actions":*

## Management's Testimony

Supervisor Huntley testified that he denied Complainant's request for auxiliary assistance on August 1, 2, and 3, 2002. Supervisor Huntley testified that the procedure to request auxiliary assistance was to complete PS Form 3996 Sections A-K, give the form to management for approval or disapproval, and further instructions. Supervisor Huntley testified that Complainant wrote on the PS Form 3996 for August 1, 2002, that he was off work 4 months, leaving late. Supervisor Huntley stated that he denied Complainant's request because Complainant was under reference volume and was given 1 hour of street assistance. Supervisor Huntley stated that on August 2, 2002, Complainant wrote on the PS Form 3996, 2 1/2 hours overtime - leaving late, 2 sets of circulars, need 1 1/2 hours to write mark-ups. Supervisor Huntley stated that he gave Complainant 1 hour of street assistance. Supervisor Huntley stated that on August 3, 2002, Complainant wrote on the PS Form 3996, 2 hours needed, leaving late, 1 1/2 hour for mark-ups. Supervisor Huntley stated that he gave Complainant 1 hour street assistance and was told his mark-ups were done on the previous day.  Supervisor  Huntley testified that Comparison employee Thomas Southard, Earl Barbee, Patrick Threatt, and Miklos Jessup did not request overtime on August 1, 2, or 3, 2002. Supervisor Huntley stated that no one was treated differently, and that he did not yell at Complainant on August 1, 2, or 3, 2002. Supervisor Huntley testified that he did not harass Complainant regarding his overtime request/auxiliary assistance for August 1, 2, and 3, 2002, and that Complainant did not inform him that he felt he was being harassed. [ROI, Affidavit B]

Supervisor Autrey testified that an employee cannot put in a leave slip for overtime.  He further testified that the procedure is to request overtime/street assistance on a PS Form 3996. Supervisor Autrey stated that he does not recall why Complainant said he needed street assistance but that street assistance was granted. Supervisor Autrey testified that everyone was treated equally, and that he did not harass Complainant regarding his overtime request/auxiliary assistance for August 1, 2, and 3, 2002, and Complainant did not inform him that he felt he was being harassed. [ROI, Affidavit C]

## 3) Retaliation Claim:

## Complainant's Testimony

Complainant testified that he engaged in this protected activity on September 21, 2000, and that Manager Ivy Cash and Supervisor Sunny Gleason were the Responsible Management Officials. Complainant stated that he was unaware of when the Responsible Management Officials in this investigation became aware

of his prior EEO Activity. Complainant testified that retaliation caused or became a factor when: 1) Supervisor Huntley and Supervisor Autrey increased his workload for the purposes of harassment, by instructing him to deliver 13 feet of mail within 8 hours when he submitted a PS Form 3996. Complainant testified that he believed that his supervisor's action was motivated by a retaliatory predisposition; 2) management continued to subject him to reprisal and retaliation because of his prior EEO activities and when he filed a grievance protesting the issuance of his Letter of Warning; 3) Station Manager Cash informed him he would be placed on LWOP when he was out on sick leave relating to aggravation of his preexisting stress condition; 4) continuous charges of LWOP caused him to constantly file grievances, resulting from overloading him with work and refusing to provide him with assistance for the workload not withstanding his restrictions; 5) when it took management a month to reimburse him for LWOP charged on December 26, 2001. Postmaster Napper and Manager Cash guaranteed him LWOP would not happen again. It happened again on January 31, 2001. He wrote to Postmaster Napper on this matter and he did not respond; and 6) when he was refused overtime. He was yelled at on the workroom floor in front of his coworkers. The Supervisors were notified verbally on the spot as each altercation occurred. [ROI, Affidavit A]

*The Postal Service's "Legitimate Nondiscriminatory Business Reasons for Its Actions":*

### Management's Testimony

Supervisor Huntley, Supervisor Autrey and Manager Cash, testified that they were not aware of Complainant's prior EEO activity. In addition, all three managers (Supervisor Huntley, Supervisor Autrey and Manager Cash) denied that retaliation was a factor when Complainant was given instructions regarding the 13 feet of mail; when his overtime (auxiliary assistance) was denied on March 16, 2002; when he issued Complainant a Letter of Warning; when Complainant was charged LWOP for part of the week of May 20-26, 2002 rather than annual leave (prime vacation); when as a result, Complainant suffered stress that prevented him from returning to work through July 3, 2002; or when on August 1, 2, and 3 he was denied overtime/auxiliary assistance. [ROI, Affidavit B]

Postmaster Napper testified that he was not aware of any prior EEO activity by Complainant. Postmaster Napper stated that he was only aware of the EEO activity in this investigation, therefore, Complainant's prior EEO Activity was not a cause or a factor when he was placed on LWOP causing him the inability to pay his bills. [ROI, Affidavit E]

### ANALYSIS

Complainant claimed discrimination on the basis of disability, reprisal and hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

Case No. 4K-220-0064-02 – Marco J. Thomas

## Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and subsequently refined that analysis in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The *McDonnell Douglas* and *Burdine* approach involves a three-step process when a Complainant alleges intentional discrimination (commonly referred to as a "disparate treatment" claim). Complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, Complainant must establish by a preponderance of the evidence a *prima facie* case of discrimination on the alleged basis. *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 576 (1978). A Complainant may establish a *prima facie* case of discrimination with circumstantial evidence by showing that he or she (1) belonged to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).

The Commission has long held that employees are similarly situated when they are subjected to the same supervisor, perform the same job function, are on the same tour of duty, and are subjected to an adverse employment action during approximately the same period. *O'Neal v. United Stated Postal Service*, EEOC Request No. 05910490 (July 23, 1991). The courts have held that:

> "Employees are not 'similarly situated' merely because their conduct might be analogized. Rather in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subjected to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it (emphasis furnished)." *Mazzelli v. RCA Global Communications, Inc.*, 642 F. Supp. 1531, 1547 (S.D. N.Y. 1986), Aff'd 814 F.2d 653 (2nd Cir. 1987).

Once a *prima facie* case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Furnco Constr. Co.*, 438 U.S. at 578. The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against Complainant. If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case."

Complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 254; *Board of Trustees of Keene College v. Sweeney*, 439 U.S. 24, 25 N ? (1978). This burden was reaffirmed and clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). In *Hicks*, the Court held that in order to impose liability upon an employer for discriminatory employment practices there must be an ultimate finding of unlawful discrimination regardless of whether or not the employer's explanation for its action was believable. Complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretexts for discrimination. *Hicks*, 509 U.S. at 507, 516; *Nichols v. Grocer*, 138 F.3d 563, 566 (5th Cir. 1998); *Swanson v. General Serv. Admin.*, 110 F.3d 1180, 1185 (5th Cir. 1997). Thus, Complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997).

The *McDonnell Douglas/Burdine* analytical paradigm need not be adhered to in all cases. In appropriate circumstances, when the agency has established legitimate, nondiscriminatory reasons for its conduct, the trier of fact may dispense with the *prima facie* inquiry and proceed to the ultimate stage of the analysis, i.e. whether Complainant has proven by preponderant evidence that the agency's explanations were a pretext for actions motivated by prohibited discriminatory animus. See *United Stated Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 713-14 (1983); Padilla *v. Department of the Air Force*, EEOC Request No. 05940634 (June 27, 1995); Hernandez *v. Department of Transportation*, EEOC Request No. 05900159 (June 28, 1990); Peterson *v. Department of Health and Human Services*, EEOC Request No. 05900456 (June 8, 1990); *Washington v. Department of the Navy*, EEOC Petition No. 03900056 (May 31, 1990).

### Hostile Work Environment

Title VII is violated when the workplace is "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). In proving this type of misconduct, an employee must objectively and subjectively show that the work environment was "one that a reasonable person would find hostile or abusive, and one that [he] in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Furthermore, in determining whether a work environment is sufficiently hostile or abusive, the totality of the circumstances must be considered, including factors such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. Moreover, "all instances of harassment need not be stamped with signs of overt discrimination .

. . if they are part of a course of conduct which is tied to evidence of discriminatory animus." Carter v. Chrysler Corp., 173 F.3d 693, 701 (8th Cir. 1999). Thus, in order to establish a hostile work environment, the record must show that: 1) Complainant is a member of a protected group; 2) unwelcome harassment occurred; 3) a causal nexus existed between the harassment and Complainant's protected-group status; and 4) the harassment affected a term, condition, or privilege of employment. Bradley v. Widnall, 232 F.3d 626, 631 (8th Cir. 2000).

### Disability Discrimination:

In order to assert a claim of disability discrimination, Complainant must satisfy the threshold requirement that he/she is a disabled person as defined by the Rehabilitation Act of 1973. EEOC Regulation 29 C.F.R. 1630.2(g) defines a person with a disability as one who: (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of having such an impairment; or (iii) is regarded as having such an impairment. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. 1630.2(i). The Interpretive Appendix to that regulation notes that "other major life activities include, but are not limited to, sitting, standing, lifting, reaching." See Appendix to 29 C.F.R. 1630.2(i). The regulation defines a "qualified individual with a disability" as an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position. 29 C.F.R. 1630.2(m).

### Retaliation:

To establish a *prima facie* case based on reprisal, a Complainant must show that: (1) he/she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he/she was subsequently disadvantaged by an adverse action; and (4) there is a causal link between the protected activity and adverse action. *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F. Supp. 318, 324 (D. Mass), aff'd 545 F.2d 222 (1st Cir. 1976); *Manoharan v. Columbia University College of Physicians and Surgeons*, 842 F. 2d 590, 593 (2nd Cir. 1988); *Witmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000). The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2nd Cir. 1980). In addition, in *Gunther v. County of Washington*, 623 F.2d 1303, 1316 (9th Cir. 1979), aff'd 452 U.S. 161 (1981), the court held that essential to the link between protected activity and adverse action is showing that the official taking action was aware that Complainant engaged in protected activity. To support a finding of unlawful retaliation, there must be proof that the agency official(s) took the action

at issue because of Complainant's prior protected activity and sought to deter Complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998) p. 8-10.

Any harassment of an employee that would not occur but for the employee's previous EEO activity may violate Title VII if sufficiently patterned or pervasive. *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C. Cir. 1985). For harassment to be considered retaliatory conduct in violation of Title VII, it must be sufficiently pervasive or severe as to create a hostile work environment which significantly and adversely affects the emotional or psychological well-being of the employee, and must somehow be connected to that employee's previous EEO activity. See *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412-1413 (10th Cir. 1987); *Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390, 1394 (8th Cir. 1983); *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982); *Bundy v. Jackson*, 641 F.2d 934, 943-944 (D.C. Cir. 1981); *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971).

## *AGENCY'S FINDINGS*

### *Prima facie case of physical disability discrimination*

As previously discussed, in order to assert a claim of disability discrimination, Complainant must satisfy the threshold requirement that he/she is a disabled person as defined by the Rehabilitation Act of 1973. EEOC Regulation 29 C.F.R. 1630.2(g) defines a person with a disability as one who: (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of having such an impairment; or (iii) is regarded as having such an impairment.

Complainant asserted that his alleged disability (stress) impacted major life activities which included his ability to work and sexual relations. Record evidence revealed that Complainant sustained an injury on January 12, 2002. Subsequently, on February 21, 2002, Complainant was referred by his doctor to a psychiatrist for evaluation for stress and anxiety due to his job situation, and Complainant states that he informed the agency he began taking medication for stress in February 2002. Complainant filed an occupational disease claim (stress) on March 6, 2002. Record evidence contains documentation from Complainant's treating psychiatrist stating that Complainant suffered from anxiety and tension related to job stress. Additional record evidence shows that Complainant's psychiatrist documented that due to the continued toxic stress of Complainant's work situation, Complainant was unable to return to his job. Although the Complainant did not specifically state how his mental impairment substantially limited a major life activity, Complainant stated that his symptoms impacted his social functioning and impaired his ability to interact with others. In addition, Complainant alleged that he suffered a "lack of consortium and the diminution of his ability to cohabitate with his girlfriend".

Case No. 4K-220-0064-02 – Marco J. Thomas                                                    20

In order to be a qualified disabled individual, an individual must have a permanent condition that substantially limits a major life activity. A review of record evidence shows that the stress experienced by Complainant and documented by his treating physician was not permanent in nature in that it did not prevent him from returning to work. In fact, record evidence from Complainant's treating physician from January 3, 2002 – July 31, 2002 [ROI, Exhibits 57, 58, 59, and 60] show that during the above referenced timeframe, Complainant had "recovered sufficiently" from several occasions of extended sick leave, and was returned to work with appropriate medical documentation. Ultimately, a medical consultation, dated July, 30, 2002, documented that while Complainant was still suffering from anxiety and tension related to job stress, and was continuing with treatment, he was well enough to return to work within his usual eight hours a day schedule on August 1, 2002. Therefore, Complainant's condition would not qualify as a permanent condition that substantially limited a major life activity (i.e. ability to work).

In relation to Complainant's assertions of "lack of consortium" and "diminution of his ability to cohabitate with his girlfriend". Complainant failed to provide medical and/or other documentation to support this claim. Based only on Complainant's assertion without required documentation, Complainant has not met the requisite burden of proof to qualify his condition as a disability. Furthermore, Complainant failed to state whether or not the lack of consortium and/or diminution of his ability to cohabitate with his girlfriend impacted him permanently or for just a brief period of time.

Although Complainant has not met the requisite burden of proof to establish that he is a qualified disabled individual, the McDonnell Douglas burden-shifting analysis is the appropriate review to look at whether Complainant was treated differently and whether management provided a legitimate, nondiscriminatory reason for its actions.

In relation to Issue #1, Complainant did not prove by preponderant evidence that he was treated differently on March 16, 2002, when he was instructed to case, and deliver 13 feet of mail within 8 hours and management provided a legitimate, nondiscriminatory reason for its actions. According to Complainant, comparison employee Thomas Southard (disability -hip injury), was on an 8-hour restriction on March 16, 2004, and had a standard reference volume of 540 letters and 734 flats. Complainant contends that comparison employee Southard was not instructed to case and deliver above his normal workload within 8 hours. Complainant stated that his normal feet amount of mail for his route is 9.75. Supervisor Huntley testified that Complainant was not over his reference volume. Supervisor Huntley testified that Complainant's reference volume was 13 feet out the door and as such asserted that Complainant's route was not overburdened. He testified that comparison employee Southard had a legitimate disability and was limited to walking certain terrain due to his condition. Complainant has failed to meet the third element in issue #1 in that he did not name other employees who received more favorable treatment under same or similar circumstances.

Furthermore, management provided a legitimate, nondiscriminatory reason for its actions.

In relation to issue #2, Complainant did not prove by preponderant evidence that he was treated differently on March 16, 2002, when his request for 1 hour of overtime was denied, and management provided a legitimate, nondiscriminatory reason for its actions.    According to Complainant, comparison employee Southard received one and a half hours of street assistance daily. Supervisor Huntley testified that every employee is to have an 8-hour day unless otherwise instructed by management, and that management must authorize all overtime. Supervisor Autrey testified that 1-hour overtime assistance may be requested when a route is 4 feet over the reference volume of that route. Supervisors can approve or disapprove overtime.  Supervisor Huntley testified that on March 16, 2002, Complainant was instructed to pull down all mail for his route. He called back to the station and stated he wouldn't be able to make his 8-hour day because he couldn't make it.  Supervisor Huntley stated that he met Complainant and observed 2 feet (one letter tray) of mail in his vehicle, letters and flats merged.  Supervisor Huntley stated that Complainant was given 30 minutes of assistance.  Supervisor Autrey testified that Complainant did not request nor did he work overtime. Supervisor Autrey further stated that Complainant requested street assistance and that he was not on the Overtime Desired List (ODL). Supervisor Autrey testified that street assistance was granted.  Record evidence revealed that comparison employee Southard, did not request auxiliary assistance and did not receive assistance on March 16, 2002. Complainant has failed to meet the third element in issue #2 in that he did not name other employees who received more favorable treatment under same or similar circumstances.     Furthermore,    management    provided    a    legitimate, nondiscriminatory reason for its actions.

In relation to issue #3, Complainant did not prove by preponderant evidence that he was treated differently when on March 15, 2002, he was issued a Letter of Warning, and management provided a legitimate, nondiscriminatory reason for its actions. Complainant testified that Supervisor Huntley issued him a Letter of Warning for Unsatisfactory Performance and Failure to Follow Instructions on March 21, 2002 when he needed relief from overtime and to be given overtime assistance in order to comply with his medical restrictions which limited him to an 8-hour tour and because his route was overburdened.    Supervisor Huntley testified that on March 16, 2002, that when Complainant called back to the station and stated he wouldn't be able to make his 8-hour day because he couldn't make it, he had approximately 1 hour, 30 minutes of mail left, and 2 hours, thirty minutes left on his tour of duty for that day. At 4:30 p.m. Complainant ended his tour and left 2 feet of mail (one letter tray) on the floor.  Supervisor Huntley testified that comparison employee Thomas Southard has not been issued a Letter of Warning.  Complainant has failed to meet the third element in issue #3 in that he did not name other employees who received more favorable treatment under same or similar circumstances.  Furthermore, management

provided a legitimate, nondiscriminatory reason for its actions.

In relation to issue #4, Complainant did not prove by preponderant evidence that he was treated differently when he was charged leave without pay (LWOP) for the week of May 20 - 26, 2002, and management provided a legitimate, nondiscriminatory reason for its actions. Complainant testified that he was subjected to a hostile work environment when Manager Cash informed him he would be placed on LWOP. At this time, he was out on sick leave related to aggravation of his pre-existing stress condition. He submitted medical documentation to support the leave request for that period. Complainant testified that comparison employees Thomas Sutherland, Demetrice Mundy and Elaine Collins were not placed on LWOP when they were out on sick leave. Complainant testified that he had pre-selected annual leave for May 20-26, 2002, Complainant testified that he called the Post Office on May 21, 2002 and spoke with Manager Ivy Cash who answered the telephone. Complainant stated that reminded Manager Cash that he was off on leave during this week so he wouldn't be penalized returning from his sick leave. Manager Cash testified that Complainant submitted his PS Form 3971 for May 20-26, 2002, on May 22, 2002, and it was approved. However, Manager Cash testified that Complainant was charged LWOP for Monday, May 20, 2002, due to his continuous LWOP status and because he did not have a PS Form 3971 on file for the week. Supervisor Huntley testified that Prime Time Vacation was never approved for Complainant, and when Complainant called and spoke with the manager on May 22, 2002, the management decided to approve the annual leave for the dates from the time of the call-in by Complainant. Record testimony reveals that between January and August 2002, comparison employee Thomas Southard, disability (hip injury), Demetrice Mundy, disability (limited duty employee/on the job injury), and Elaine Collins (limited duty employee/on the job injury) were not charged LWOP. Complainant has failed to meet the third element in issue #4 in that he did not name other employees who received more favorable treatment under same or similar circumstances. Furthermore, management provided a legitimate, nondiscriminatory reason for its actions.

In relation to issue #5, Complainant did not prove by preponderant evidence that he was treated differently when he suffered stress that prevented him from returning to work through July 3, 2002, and management provided a legitimate, nondiscriminatory reason for its actions. Complainant testified that he started missing work beginning January 2002. The doctors diagnosed him with hypertension. He informed the union and the Employee Assistance Program (EAP) that he had become stressed with the issue of LWOP. Complainant testified that comparison employees Thomas Sutherland, Demetrice Mundy and Elaine Collins weren't harassed for charges with LWOP. Supervisor Huntley testified that Complainant worked approximately 35 days in calendar year 2002. Manager Cash testified that the doctor wrote that Complainant's stress was due to the continued toxic stress of his work situation and he was unable to return to his job. Complainant gave no reasons for his absences. Normally, he would just

call in and say, I'm sick and then, hang up.    Manager Cash testified that
Complainant was absent on the following dates:

| | |
|---|---|
| 1/3-8/02 | No diagnosis provided |
| 1/1 5-22/02 | Diagnosis: Sinusitis and respiratory tract infection |
| 2/20/02 -3/6/02 | Diagnosis: Hypertension. |
| 5/3-21/02 | No Diagnosis provided |
| 5/22/02 -7/3/02 | No diagnosis provided |

Complainant has failed to meet the third element in issue #5 in that he did not
name other employees who received more favorable treatment under same or
similar circumstances.    Furthermore, management provided a legitimate,
nondiscriminatory reason for its actions.

In relation to issue #6, Complainant did not prove by preponderant evidence that
he was treated differently when on December 26, 2001 and January 31, 2002, he
was placed on LWOP causing him the inability to pay his bills, and management
provided a legitimate, nondiscriminatory reason for its actions.    Complainant
testified that on December 26, 2001, and again on January 31, 2002, Supervisor
Huntley charged him LWOP causing him to be unable to pay his bills.
Management provided no explanation for this incidents. It took management a
month to reimburse him 8 hours for this date. He doesn't know if he was
reimbursed for the LWOP charged on January 31, 2002.  Complainant testified
that comparison employees Demetrice Mundy and Desta Beyene were out on
extended absences and weren't charged LWOP.  Supervisor Huntley testified
that any call-in the day before or after a holiday, the employee will be put into
LWOP status until acceptable documentation that says (employee was
incapacitated or unable to work) is brought in within 72 hours or return to work. If
documentation is not provided, the LWOP stands.  Supervisor Huntley testified
that he charged Complainant LWOP on December 26, 2001. This incident was a
management error. Complainant had submitted a leave slip for annual leave. It
was approved pending FMLA documentation but was not noted on the schedule.
A pay adjustment on January 25, 2002 was given to Complainant correcting this
error.   Supervisor Huntley testified that on January 31, 2002, he charged
Complainant 5 hours and 10 units of LWOP, and 2 hours and ninety units of
unscheduled sick leave because Complainant did not call in until 5 hours and 10
units of that day. He should have called 1 hour prior to his reporting time, 7:00
a.m. He does not recall doing a pay adjustment other than the pay adjustment
given for LWOP charged for December 26, 2001. Supervisor Huntley testified
that comparison employee Demetrice Mundy was not charged LWOP between
January and August 2002. Comparison employee Desta Beyene was on
Continuation of Regular Pay (COP) with the Department of Labor and in some
cases requested LWOP in advance.  Complainant has failed to meet the third
element in issue #6 in that he did not name other employees who received more
favorable treatment under same or similar circumstances.    Furthermore,
management provided a legitimate, nondiscriminatory reason for its actions.

In relation to issue #7, Complainant did not prove by preponderant evidence that he was treated differently when on August 1 - 3, 2002, he put in a leave slip for overtime , and management provided a legitimate, nondiscriminatory reason for its actions.   Complainant testified that he was subjected to harassment when Supervisors Huntley and Archer refused him overtime and yelled at him, each day, on the workroom floor in front of his co-workers. He advised them verbally each day as the altercation occurred of the harassment. They took no corrective action regarding these incidents. Complainant testified that comparison employees Thomas Sutherland, Earl Barbee, Pat Threatt and Miklos Jessup were not yelled at on the workroom upon putting in a request for overtime. Supervisor Huntley testified that he denied Complainant's request because he was under reference volume and was given 1 hour of street assistance. On August 2, 2002, Complainant wrote on the PS Form 3996, 2 1/2 hours overtime - leaving late, 2 sets of circulars, need 1 1/2 hours to write mark-ups. He gave Complainant 1 hour of street assistance. On August 3, 2002, Complainant wrote on the PS Form 3996, 2 hours needed, leaving late, 1 1/2 hour for mark-ups. He gave Complainant 1 hour street assistance and was told his mark-ups were done on the previous day. Record testimony revealed that comparison employees Thomas Southard, Earl Barbee, Patrick Threatt, and Miklos Jessup did not request overtime (PS Form 3996) on August 1, 2, or 3, 2002. No one was treated differently. No one was yelled at, at any time. Complainant has failed to meet the third element in issue #7 in that he did not name other employees who received more favorable treatment under same or similar circumstances.   Furthermore, management provided a legitimate, nondiscriminatory reason for its actions.

Therefore, as the Complainant failed to satisfy all three elements, he has not established a *prima facie* case of disability and has failed to meet the requisite burden of proof for disability discrimination.

### *Prima Facie case of Hostile Work Environment*

In order to establish a hostile work environment, the record must show that: 1) Complainant is a member of a protected group; 2) unwelcome harassment occurred; 3) a causal nexus existed between the harassment and Complainant's protected-group status; and 4) the harassment affected a term, condition, or privilege of employment. Bradley v. Widnall, 232 F.3d 626, 631 (8th Cir. 2000).

Since Complainant failed to establish that he is a qualified disabled individual, he failed to meet element #1 of his *prima facie* case, that he is a member of a protected group.

In relation to element #2, as it relates to the accepted issues 1-7, since 1) Complainant failed to prove by preponderant evidence that he was mistreated/treated differently and 2) management articulated a legitimate non-discriminatory business reason for all seven (7) issues, Complainant has failed to

prove that unwelcome harassment occurred in relation to issues 1-7. Additionally, for all seven (7) issues, responding management officials testified that they did not harass Complainant, and Complainant did not inform them that he felt he was being harassed.

Accordingly, in relation to element #3 and element #4, since Complainant failed to prove that he was a member of a protected group, or that harassment occurred, he will be unable to show a causal nexus between the harassment and his protected-group and/or that the alleged harassment affected a term, condition, or privilege of his employment.

Thus, since none of the four (4) elements were met, Complainant has failed to establish a *prima facie* case of harassment.

### Prima facie case of retaliation discrimination

A *prima facie* case of reprisal requires that Complainant show: (1) he/she engaged in a protected activity (i.e., in the EEO process or opposed discriminatory practices); (2) the agency was aware of the protected activity; (3) he/she was subjected to an adverse employment decision or action subsequent to or contemporaneous with the protected activity; and (4) there is a causal connection between the protected activity and the adverse action, or (absent other evidence tending to establish retaliatory motivation) the adverse treatment followed the protected activity within such a period of time that retaliatory motive may be inferred. Hochstadt v. Worcester Found. For Experimental Biology, 425 F. Supp. 318 (D. Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976).

Complainant met the first element of his *prima facie* case of retaliation in that he engaged in statutorily protected activity when he filed two (2) prior EEO complaints 3/11/1998 and 9/21/2000.

Complainant failed to meet the second element in that all four Responding Management Officials (Supervisor Huntley, Supervisor Autrey, Manager Cash, and Postmaster Napper) testified that they were not aware of Complainant's prior EEO activity, and Complainant testified that he was unaware of when the Responsible Management Officials in this investigation became aware of his prior EEO Activity.   In addition, all four managers denied that retaliation was a factor in any of the management decisions which are the basis of this complaint.

Complainant failed to meet the third element since prior to this instant complaint, which was filed May 31, 2002, the most recent prior EEO activity was September 21, 2000, and as such was not subsequent to or contemporaneous with the adverse action that is the subject of this complaint.

Complainant failed to meet the fourth element in that record evidence did not show a causal connection between the protected activity and the adverse action,

and, the adverse treatment did not follow the protected activity within such a period of time that retaliatory motive may be inferred.

As Complainant has not satisfied all four elements, he has not established a *prima facie* case of retaliation.

## CONCLUSION

In a case of disparate treatment discrimination, such as this one, where management has articulated legitimate, nondiscriminatory reasons for its actions, the record should be reviewed in its entirety to determine whether it supports a finding of discrimination. Accordingly, after carefully considering the entire record, and applying the legal standards outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); and *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979) (applying the standard to cases brought under the ADEA); *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993); *Bradley v. Widnall*, 232 F.3d 626, 631 (8th Cir. 2000) (applying the standard to harassment cases); and *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F.Supp. 318 (D.Mass), aff'd 545 F.2d 222 (1st Cir. 1976) (applying the standard to reprisal cases; the agency finds that Complainant have failed to prove by preponderant evidence that the agency's articulated explanations were a pretext for actions motivated by prohibited discriminatory animus. After a review of the entire record, the Postal Service is closing this case with a finding of no discrimination on any basis.

## COMPLAINANT'S APPEAL RIGHTS

### Right to file a civil action

If Complainant are dissatisfied with this final decision, Complainant may file a civil action in an appropriate U.S. District Court **within 90 calendar days** of Complainant's receipt of this decision. If Complainant choose to file a civil action, that action should be captioned **Marco J. Thomas v. John E. Potter, Postmaster General, U. S. Postal Service**. Complainant may also request the court to appoint an attorney for Complainant and to authorize the commencement of that action without the payment of fees, costs, or security in such circumstances as the court deems just. Complainant's application must be filed within the same 90-day time period for filing the civil action.

### Appeal to the Equal Employment Opportunity Commission

In lieu of filing a civil action, Complainant may appeal to the Equal Employment Opportunity Commission **within 30 calendar days** of the date of Complainant's receipt of this decision, or, if Complainant are represented by an attorney, **within 30 calendar days** of Complainant's attorney's receipt of the decision. The appeal must be in writing and filed with the Director, Office of Federal Operations, Equal

Case No. 4K-220-0064-02 – Marco J. Thomas                                    27

Employment Opportunity Commission. P.O. Box 19848, Washington, D.C. 20036-9848, or by personal delivery or facsimile.

Complainant should use PS Form 3573, Notice of Appeal/Petition, (attached to the agency's decision) and should indicate what Complainant is appealing.    Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal.  A copy of the appeal and any supporting documentation must also be submitted to the agency's designated office at: Office of EEO Compliance and Appeals, United Stated Postal Service, Capital Metro Operations, P. O. Box 1730, Ashburn, VA 20146-1730.  In or attached to the appeal to the EEOC, Complainant must certify the date and method by which service of the appeal was made on the agency's office.

Failure to file within the 30-day period could result in the EEOC's dismissal of the appeal unless Complainant explains, in writing, extenuating circumstances which prevented filing within the prescribed time limit.  In this event, extending the time limit and accepting the appeal will be discretionary with the EEOC.

If Complainant file an appeal with the EEOC' Office of Federal Operations, Complainant may thereafter file a civil action in an appropriate U.S. District Court within 90 calendar days of Complainant's receipt of the Office of Federal Operations' decision.  A civil action may also be filed after 180 calendar days of Complainant's appeal to the EEOC, if Complainant has not received a final decision on Complainant's appeal.

Kathleen M. Eley
Manager, EEO Compliance & Appeals
Capital Metro Operations

Attachments:


Attachments:
    1. Certificate of Service
    2. PS Form 3573, "Notice of Appeal/Petition" (Complainant and Complainant's Representative, if an attorney)

UNITED STATED POSTAL SERVICE
EQUAL EMPLOYMENT OPPORTUNITY CASE
IN THE MATTER OF

MARCO J. THOMAS, COMPLAINANT
Agency Case No. 4K-220-0064-02

CERTIFICATE OF SERVICE

*For timeliness purposes, it is presumed that the Final Agency Decision was received by the following individuals within five (5) calendar days after it was mailed on the date indicated below.*

**COMPLAINANT:**
MARCO J. THOMAS
10008 EDGEWATER TER
FT WASHINGTON MD 20744-5767

**COMPLAINANT'S REPRESENTATIVE:**
GWENDOLYN W D'SOUZA
ATTORNEY AT LAW
200A MONROE STREET #305
ROCKVILLE MD  20850-4442

**MANAGER, HUMAN RESOURCES:**
NO VIRGINIA DISTRICT - USPS
8409 LEE HIGHWAY
MERRIFIELD VA  22081-9994

**EEO OFFICE**
NO VIRGINIA DISTRICT – USPS
44715 PRENTICE DRIVE
DULLES VA  20101-9411

10-17-05
DATE

*Mary Ana Sevint*
OFFICE OF EEO COMPLIANCE & APPEALS
U. S. POSTAL SERVICE
CAPITAL METRO OPERATIONS
P O BOX 1730
ASHBURN VA  20146-1730



**UNITED STATES**
**POSTAL SERVICE**®

Notice of Appeal/Petition to the Equal Employment
Opportunity Commission, Office of Federal Operations

| 1. Appellant's Name *(Last, First, MI) (Please Print or Type)* | 2. Daytime Telephone No. *(Include Area Code)* |
|---|---|

3. Home Mailing Address

| 4. Name of Attorney or Other Representative *(If any)* | 5. Telephone No. *(Include Area Code)* |
|---|---|

6. Address of Attorney or Other Representative *(If applicable)*

7. Has the Appellant Filed a *Formal Complaint* with His/Her Agency?

☐ No      ☐ Yes – Indicate the Agency's Complaint No.: _____

8. Name of Agency Being Charged with Discrimination

9. Location of Duty Station or Local Facility in Which the Complaint Arose

10. Has a *Final Decision* Been Issued by the Agency or MSPB on this Complaint?

☐ Yes *(Indicate the date the appellant received it, _____ and attach a copy.)*

☐ No

☐ This Appeal Alleges a Breach of a Settlement Agreement.

11. Has a Complaint Been Filed on this Same Matter with the Commission, Another Agency, or Through Any Other Administrative or Collective Bargaining Procedure?

☐ No      ☐ Yes *(Indicate the agency of procedure, complaint/docket number, and attach a copy, if appropriate.)*

12. Has a Civil Action (Lawsuit) Been Filed in Connection with This Complaint?

☐ No      ☐ Yes *(Attach a copy of the civil action filed.)*

NOTICE: Before mailing this appeal, please be sure to **attach a copy of the final decision** from which you are appealing, if one has been issued. Any comments or brief in support of the appeal MUST be filed with the Commission AND with the agency within 30 days of the date this appeal is filed. Making a knowingly false statement on this form is punishable by law. See 18 U.S.C. § 1001.

**Privacy Act Statement**

*(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof is given below.)*

1. Form Number/Title/Date: EEOC Form 573, Notice of Appeal/Petition (April 1992 edition).

2. Authority: 42 U.S.C. § 2000e-16.

3. Principle Purpose: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. Routine Uses: Information provided on this form will be used by Commission employees to determine (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has

jurisdiction over the issue(s) raised in the appeal; and (d) generally to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and such as, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in de-personalized form as a database for statistical purposes.

5. Whether Disclosure is Mandatory or Voluntary and Effect on Individual for not Providing Information: Since your appeal is voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

| 13. Signature of Appellant or Appellant's Representative | Date |
|---|---|

Send Your Appeal to:

THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
PO BOX 19848
WASHINGTON DC 20036-9848

| For EEOC Use Only | OFO Docket No |
|---|---|



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations
### P.O. Box 19848
### Washington, D.C. 20036

Marco J. Thomas,
Complainant,

v.

John E. Potter,
Postmaster General,
United States Postal Service,
Agency.

Appeal No. 01A42767
Agency No. 4K-220-0064-02
Hearing No. 100-2003-8242X

### DECISION

Complainant appeals to the Commission from the agency's February 25, 2004 decision dismissing his complaint. Complainant alleges discrimination on the bases of disability and reprisal when management subjected him to a hostile work environment when:

1. On March 16, 2002, he was instructed to case and deliver 13 feet of mail within 8 hours;

2. On March 16, 2002, his request for 1 hour of overtime was denied;

3. On March 15, 2002, he was issued a Letter of Warning;

4. He was charged leave without pay (LWOP) for the week of May 20 - 26, 2002;

5. He suffered stress that prevented him from returning to work through July 3, 2002;

6. On December 26, 2001 and January 31, 2002, he was placed on LWOP causing him the inability to pay his bills; and,

7. On August 1 - 3, 2002, he put in a leave slip for overtime and was denied and harassed.

01A42767

On October 21, 2003, the agency served its first set of discovery requests on complainant by facsimile. Complainant did not file a response, and on November 18, 2003, the agency filed a Motion to Compel. On December 1, 2003, complainant filed deficient responses to the agency's discovery requests, and on December 2, 2003, moved for the Motion to Compel to be found moot. On December 4, 2003, the agency's Motion to Compel was denied as moot, but subject to renewal if complainant's discovery responses were inadequate. On December 12, 2003, the agency renewed its Motion to Compel, which complainant opposed. On December 29, 2003, the Administrative Judge (AJ) granted the agency's Motion to Compel in part, and denied it in part. The AJ's decision on the Motion to Compel stated that complainant "shall produce the specific answers to the Agency's discovery requests . . . within 15 calendar days of the date of this order, i.e., by close of business on January 13, 2004. . . . Failure to do so may result in appropriate sanctions under EEOC Regulations at 29 C.F.R. § 1614.109(f)(3)." On January 13, 2004, complainant moved for an extension of time to provide the agency with supplemental responses to its discovery. On January 20, 2004, the AJ issued an Order granting an extension until January 21, 2004. The order further provided that "[n]o further extensions [would] be granted." On January 21, 2004, complainant filed a second motion for an extension of time, which was denied by the AJ that same day. The agency never received any supplemental discovery from complainant. On January 23, 2004, the agency filed a motion for sanctions, to dismiss, and for a stay of filing a motion for summary judgment pending resolution of the instant motion. On February 19, 2004, the AJ issued an Order, dismissing complainant's case pursuant to 29 C.F.R. § 1614.107(a)(7) for failure to prosecute. The agency, on February 25, 2004, issued a decision dismissing complainant's complaint for failure to prosecute pursuant to 29 C.F.R. § 1614.107(a)(7). Complainant appeals from the February 25, 2004 decision.

We find that it was a proper sanction for the AJ to dismiss complainant's case from the hearing phase. Pursuant to 29 C.F.R. § 1614.107(a)(7), however, an agency may dismiss a complaint for failure to prosecute where complainant has failed to respond to requests within 15 days of receipt, or if the response does not address the agency's request, provided that the request included a notice of the proposed dismissal. There is no indication that the agency, before or after the AJ's Order, made a request with the requisite notice of proposed dismissal. Therefore, the agency's dismissal at this time is improper. We shall remand the matter so that the agency may issue a decision on the merits of the complaint (without a hearing).

The agency's decision dismissing complainant's complaint is REVERSED, and we REMAND the matter to the agency for further processing in accordance with this decision and applicable regulations.

3                                            01A42767

## ORDER

The agency shall issue a decision on the complaint within 60 days of the date this decision becomes final pursuant to 29 C.F.R. § 1614.110. A copy of the agency's decision must be sent to the Compliance Officer as referenced below.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. *See* 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. *See* 29 C.F.R. § 1614.409.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See*

4                                          01A42767

29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).


### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.    In the alternative, you may file a civil action **after one hundred and eighty (180) calendar days** of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or  department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. **Filing a civil action will terminate the administrative processing of your complaint.**


### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the**

5                                          01A42767

sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

AUG - 3 2005

Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:**

AUG - 3 2005

Date

Equal Opportunity Assistant



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

AUG - 5 2005

USPS - Capital-Metro
Mgr,EEO Compliance & Appeals
P.O.Box 1730
Ashburn, VA  20146-1730

REF: Compliance #: 06A51027
     Appeal #    : 01a42767
     Agency #    : 4K220008402
Thomas v. USPS - Capital-Metro

Dear Sir/Madam:

The Commission's decision in appeal number 01a42767 directed your agency to take corrective action related to the appellant's complaint. This letter is to inform you that your compliance with that decision will be monitored under the tracking number cited above. Please submit your compliance report to John Flanigan           , Compliance Officer, at the above address, and use this tracking number in all related correspondence.

Your report must be in writing. It should enumerate each of the actions taken as ordered and include appropriate supporting documentation, e.g. copies of personnel action forms, copies of posted notices, copies of documents effecting any payments, etc. If backpay was included in our decision, your report should also include the computations and a summary of calculations as well as deductions. A copy of your report must be sent to the appellant.

Your cooperation in this matter will be greatly appreciated.

Sincerely,

Robert J. Barnhart, Director
Compliance and Control Division


cc:  Marco J Thomas
     10008 Edgewater Terr
     Ft.Washington, MD  20744-5767


     Gwenlynn W D'Souza
     200A Monroe St
     #305
     Rockville, MD 20850

### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### 1400 L Street, N.W.
### Suite 200
### Washington, D.C. 20005

---

### FACSIMILE COVER PAGE

---

TO:

Thomas J. Marshall, Managing Counsel
Capital Metro Law Office
U.S. Postal Service
FAX: (202) 314-6820

FROM:        Supervisory Administrative Judge Steve Shih
             U.S. Equal Employment Opportunity Commission
             Telephone: (202) 275-6633
                          419-0733

DATE:        September 10, 2003

SUBJECT:     Acknowledgment and order in EEOC Case No. 100-A3-8242X

PAGES:       8 (including cover page)

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1400 L Street, N.W., Suite 200
Washington, D.C. 20005

|  |  |  |
|---|---|---|
| Marco J. Thomas, | ) |  |
| Complainant, | ) | EEOC No. 100-A3-8242X |
| v. | ) |  |
| John E. Porter, Postmaster General | ) | Agency No. 4-K-220-0064-02 |
| U.S. Postal Service, | ) |  |
| Agency. | ) | Date: September 10, 2003 |

## ACKNOWLEDGMENT AND ORDER

This acknowledges receipt of the complainant's request for a hearing. 29 C.F.R. § 1614.109 and Chapter 7 of EEOC Management Directive 110, November 9, 1999 (EEO MD-110) govern the conduct of hearings. The regulations and EEO MD-110 are available on the Commission's website at www.eeoc.gov.

The Administrative Judge whose name appears below has been assigned to preside over this complaint. Failure to follow the orders of the Administrative Judge or to comply with the Commission's regulations may result in sanctions. *See* 29 C.F.R. § 1614.109(f)(3). When a conflict between the parties arises, the parties should attempt to resolve the conflict themselves before bringing it to the attention of the Administrative Judge.

## I.   CORRESPONDENCE AND MOTIONS

Each party must provide the opposing party with a copy of all correspondence that he/she sends to the Administrative Judge. The attachment of a certificate of service may demonstrate that the opposing party was provided a copy. Failure to provide a copy of submissions to the opposing party may result in return of such submissions without consideration. The parties are reminded of their ongoing obligation to keep this office informed of their current mailing address. Other than to clarify a procedural issue or during alternative dispute resolution, it is inappropriate for the parties to engage in *ex parte* (one-sided) communication with the Administrative Judge.

Extensions of filing dates and postponements will not be granted, absent a prompt request in writing and a showing of good cause. Failure by complainant to obtain representation, or failure by the agency to assign this matter to a representative, will not be grounds for postponement.

On any request or motion, the requesting party shall state that he/she has made a good faith effort to resolve the matter with the non-moving party and, where appropriate, indicate whether the opposing party has an objection to the request or motion. All motions should be accompanied by a proposed order granting the relief requested in the motion.

## II.    DESIGNATION OF REPRESENTATIVE

The parties are entitled to be represented. However, the complainant is not required to be represented. The EEOC does not provide representatives for either party. Even if the complainant has previously designated a representative for EEO counseling and agency investigation of the complaint, he/she must renew that designation for the purpose of EEOC processing of this complaint. The parties must inform this office of the name, address and telephone number of his/her respective representative. If that representative changes, or if a currently unrepresented complainant obtains representation in the future, the party shall notify the Administrative Judge and the other party immediately.

## III.    PARTIAL DISMISSALS

The parties have thirty (30) calendar days from receipt of this Order to identify any claims the agency has dismissed from the complaint during the agency investigative process, pursuant to 29 C.F.R. § 1614.107(a), and to comment on the appropriateness of each dismissal. Once the opportunity for identification and comment has passed, the Administrative Judge will determine, pursuant to 29 C.F.R. § 1614.107(b), the appropriateness of the agency's decision to dismiss each claim. If the complainant fails to oppose in writing the dismissal of a claim within the thirty (30) day comment period, the opportunity to have the dismissal reviewed by the Administrative Judge shall be deemed waived.

## IV.    SETTLEMENT

Within thirty (30) calendar days of receipt of this Order, the parties are directed to contact each other to define the claim(s) presented, to develop stipulations (i.e., agreements between the parties that certain facts are true for purposes of adjudicating this complaint) and to discuss settlement. The parties must discuss specific settlement proposals. The agency must designate an individual with settlement authority to attend settlement discussions convened by an Administrative Judge.

## V.    DISCOVERY

The parties are hereby notified of their right to seek discovery prior to the hearing in accordance with 29 C.F.R. § 1614.109(d). The parties must cooperate with each other in honoring discovery requests. The parties are expected to initiate and complete needed discovery with a minimum of intervention by the Administrative Judge. **Except as indicated below, copies of interrogatories, requests for production of documents, requests for admissions, deposition**

2

notices and transcripts, and responses to such should not be sent to the Administrative Judge.

A.    Discovery shall be completed within **70 calendar days** from the date of receipt of this Order unless otherwise directed by the Administrative Judge. If the parties agree between themselves to extend discovery deadlines that would, in turn, extend the deadline for completion of all discover, the parties must seek the Administrative Judge's prior approval.

B.    The method and scope of discovery shall be subject to the following:

    1.    Interrogatories shall be limited to one set. The set of interrogatories shall contain no more than thirty (30) questions including subparts.

    2.    Requests for production of documents must be specific and identify the documents or types of documents requested. Requests for production of documents shall contain no more than thirty (30) requests including subparts.

    3.    Requests for admissions shall not exceed thirty (30) in number including subparts. This limit does not apply to admissions relating to the authenticity of documents.

    4.    The agency must make employees available for deposition. In addition, the agency must arrange for the appearance at deposition of former employees currently employed by the federal government.

Absent prior approval from the Administrative Judge, a party must initiate discovery within twenty (20) calendar days of receipt of this Order. If a party does not submit a timely discovery request, the Administrative Judge may determine that the party has waived the right to pursue discovery.

A party must respond to a request for discovery within fifteen (15) calendar days from receipt of the request. Requests for discovery and objections to such requests must be specific. A notice of deposition does not require a written response; however, any objection to a notice of deposition must be served promptly on the moving party. A deposition may be noticed and taken at any time during the discovery period.

Discovery motions, including motions to compel, must be filed within ten (10) calendar days after receipt of a deficient response or after the response to the discovery is due, whichever occurs first. Motions to compel and other discovery motions must be accompanied by the discovery requests and responses and a declaration stating that the moving party has made a good faith effort to resolve the discovery dispute. The declaration shall indicate the efforts made to resolve the dispute and identify which items remain in dispute. Statements in opposition to discovery motions must be filed within ten (10) calendar days of receipt of the motion. Rulings will be made based

3

upon the written submissions. The failure to timely file objections to discovery may result in the objections being deemed waived.

## VI.   SANCTIONS FOR FAILURE TO FOLLOW ORDERS

Failure to follow this Order or other orders of the Administrative Judge may result in sanctions pursuant to 29 C.F.R. § 1614.109(f)(3).   The Administrative Judge may, where appropriate:

(A)   Draw an adverse inference that the requested information, or the testimony of the requested witness, would have reflected unfavorably on the party refusing to provide the requested information;

(B)   Consider the matters to which the requested information or testimony pertains to be established in favor of the opposing party;

(C)   Exclude other evidence offered by the party failing to produce the requested information or witness;

(D)   Issue a decision fully or partially in favor of the opposing party; or

(E)   Take such other actions as appropriate.

## VII.   DECISION WITHOUT A HEARING

Pursuant to 29 C.F.R. § 1614.109(g)(1), a party may file a motion for summary judgment if that party believes that some or all material facts are not in genuine dispute and there is no genuine issue as to credibility. **A motion for summary judgment must include a statement of the undisputed material facts.** Unless otherwise ordered by the Administrative Judge, a motion for summary judgment must be filed not later than fifteen (15) days after the close of discovery; the opposing party will then have fifteen (15) days from receipt of the motion in which to file a response; and the moving party will then have five (5) days from receipt of the response to file a reply. Motions for summary judgment, and responses to such motions, shall contain specific citations to referenced evidence (e.g., cite the specific pages of the report of investigation, or other submitted evidence, in support of an argument).

The Administrative Judge may also issue summary judgment on his/her own initiative, pursuant to 29 C.F.R. § 1614.109(g)(3).

An Administrative Judge may also dismiss a complaint pursuant to 29 C.F.R. § 1614.109(b) for any of the reasons set forth in 29 C.F.R. § 1614.107(a). The Administrative Judge may dismiss complaints on his/her own initiative, or upon the Agency's motion to dismiss a complaint.

4

## VIII.  AMENDMENT AND CONSOLIDATION OF COMPLAINTS

Pursuant to 29 C.F.R. § 1614.106(d), the complainant may move to amend his/her complaint to add claims that are like or related to the original complaint.  In order to amend the complaint, the complainant shall submit a motion as early as possible to the Administrative Judge stating the new claim, the date(s) when it occurred, and why it is like or related to the original complaint.  The Administrative Judge may amend the original complaint to include the new claim(s) if he/she finds the new claim is like or related to the original complaint.  Motions to amend filed late in the process may be denied.

The Administrative Judge also has discretion to consolidate complaints pursuant to 29 C.F.R. § 1614.606.  The parties shall advise the Administrative Judge in writing of any other complaint(s) pending at any stage of processing and should include all case number(s) or other information identifying such complaint(s).

It is so ORDERED.


For the Commission:

                     for     Rebecca Dickinson,
Administrative Judge
Tel. 202-275-7377
Fax 202-275-0025

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing ACKNOWLEDGMENT AND ORDER either within five (5) calendar days after the date it was sent *via* first class mail, or immediately upon confirmation of e-mail or fax delivery. I certify that on the date of this order, the foregoing ACKNOWLEDGMENT AND ORDER was sent to the following:

By E-mail to:

By Fax to:

Thomas J. Marshall, Managing Counsel
Capital Metro Law Office
U.S. Postal Service
FAX: (202) 314-6820

By first class mail, postage pre-paid to:

Simon Banks
P.O. Box 17052
Alexandria, Virginia 22302-8752

Marco J. Thomas
10008 Edgewater Terrace
Fort Washington, Maryland 20744

LYNNE M. SMITH
Legal Clerk

Marco Thomas
10008 Edgewater Terrace
Ft. Washington MD 20744
Phone: 301-567-2473





| To: | T. Marshall, Man. Counsel, Cap. Metro | From: | M. Thomas |
| | Law Office, U.S. Postal Service | | Cert. No. 7003 1680 0001 2464 6170 |
| Fax: | **703-243-4061** | Date: | October 16, 2003 |
| Phone: | 703 525 8006 | Pages: | 4 w Fax Cover |
| Re: | Discovery: EEOC NO. 100-A3-8242X | CC: | Arlington, Main P.O., Management. U.S.P.S |
| | Agency No. 4-K-220 0064-02 | | R. Dickinson, Admin Judge, EEOC |
| | | | Simon Banks, ALJ |

X Urgent     X For Review     X Please Comment     X Please Reply     ☐ Please Recycle

•Comments

Attachment(s): Discovery Request.

Please contact my representative S. Banks, ALJ at 703-575-8487 and myself at 301-346-7083 to set a date to discuss settlement proposal(s).

Marco Thomas

City Carrier





```
            NATIONAL CAPITAL STATION
         WASHINGTON, District of Columbia
                   200189998

10/16/2003      (202)523-2368      07:52:10 PM
=================================================
                  Sales Receipt
Product         Sale    Unit        Final
Description      Qty    Price        Price

ARLINGTON VA 22210                   $0.37
First-Class
  Return Receipt                     $1.75
  Certified                          $2.30
    Label Serial #:  70031680000124646133
                                    ========
           Issue PVI:                $4.42

WASHINGTON DC 20005                  $0.37
First-Class
  Return Receipt                     $1.75
  Certified                          $2.30
    Label Serial #:  70031680000124646187
                                    ========
           Issue PVI:                $4.42

WASHINGTON DC 20260                  $0.37
First-Class
  Return Receipt                     $1.75
  Certified                          $2.30
    Label Serial #:  70031680000124646170
                                    ========
           Issue PVI:                $4.42

Total:                              $13.26

Paid by:
Cash                                $13.26


Bill#:  1000301482542
Clerk:  09

      Refunds only per DMM P014
   ------ Thank you for your business ------
            Customer Copy
```

Marco Thomas
10308 Edgewater Terrace
Ft. Washington MD 20744
Phone: 301-567-2473

City Carrier U.S.P.S.



| To: | Arlington, Main P.O., Management. U.S.P.S | From: | M. Thomas |
|---|---|---|---|
| | | | Cert. No. 7003 1680 0001 2464 6168 |
| Fax: | 703-243-4061 | Date: | October 16, 2003 |
| Phone: | 703 525 6006 | Pages: | 4 w Fax Cover |
| Re: | Discovery: EEOC NO. 100-A3-6242X | CC: | R. Dickinson, Admin Judge, EEOC |
| | Agency No. 4-K-220 0064-02 | | Simon Banks, ALJ |
| | | | T. Marshall, Man. Counsel. Cap. Metro |
| | | | Law Office, U.S. Postal Service |

X Urgent    X For Review    X Please Comment    X Please Reply    ☐ Please Recycle

•Comments:

Attachment(s): Discovery Request.

Please contact my representative S. Banks, ALJ at 703-575-8487 and myself at 301-346-7083 to set a date to discuss settlement proposal(s).

Marco Thomas

City Carrier



7003 1680 0001 2464 6163



```
           NATIONAL CAPITAL STATION
        WASHINGTON, District of Columbia
                  200139998

10/16/2003     (202)523-2368    07:52:10 PM
                  Sales Receipt
Product       Sale    Unit       Final
Description    Qty    Price      Price

ARLINGTON VA 22210                $0.37
First-Class
   Return Receipt                 $1.75
   Certified                      $2.30
   Label Serial #:  70031680000124646153
                                  ========
           Issue PVI:            $4.42

WASHINGTON DC 20005               $0.37
First-Class
   Return Receipt                 $1.75
   Certified                      $2.30
   Label Serial #:  70031680000124646167
                                  ========
           Issue PVI:            $4.42

WASHINGTON DC 20260               $0.37
First-Class
   Return Receipt                 $1.75
   Certified                      $2.30
   Label Serial #:  70031680000124646170
                                  ========
           Issue PVI:            $4.42

                                ===========
Total:                          $13.26

Paid by:
Cash                            $13.26


Bill#:  1000301462542
Clerk:  09

        Refunds only per DMM P014
   ------ Thank you for your business ------
              Customer Copy
```

7003 1680 0001 2464 6187

Rebecca Dickinson, EEOC, Administrative Judge

Marco Thomas
10008 Edgewater Terrace
Ft. Washington Md 20744

Date: October 16, 2003
Thomas J. Marshall, Managing Counsel, Capital Metro Law Office
Cert. No. 7003 1680 0001 2464 6170

Management, Arlington Main P.O.
Cert. No 7003 1680 0001 2464 6163

Complaint: EEOC NO. 100-A3-8242X, Agency No. 4-K-220-0064-02
Acknowledgment and Orders, Date: September 10, 2003, Received: Sept. 17, 2003

Re: Discovery
Interrogator Question(s):

## Issue No.s  1, 2, 3

1. What date was Route(Rt.) No. 1038 inspected?  (Please produce all documentation pertaining to Rt. 1038, also include: Reference Volume(Ref. Vol.), established Reference Leave Time (Ref. Lv Time), Pivot Plan Worksheet from completed date of inspection).

2. What was the Actual Volume(Act. Vol.),the time City Carrier(CC), Thomas entered Street Tour Move (STM) & all clock ring(s) for March 16, 2002?  (Please provide all documentation).

3. Was CC, Thomas on the Overtime Desired List(ODL) on March 16, 2002?

4. When or Did CC Thomas, notify RMO's that Rt. No. 1038 was out of adjustment? (If so, explain in detail/provide documentation and action(s) RMO's took when informed about the out of adjusted Rt. No.1038).

5. Which RMO(s) disapproved CC, Thomas for overtime?

6. Which RMO(s) issued CC, Thomas a Letter of Warning dated March 20, 2002?

7. When did CC, Thomas notify RMO(s) of his medical condition? (Explain in detail/provide documentation and actions RMO(s) took when informed of his condition)

8. Was CC, Thomas ever offered an alternative work or duty assignment by RMO(S) due to his medical condition?  (Explain in detail/provide documentation and actions RMO(s) took when      offered an alternate duty assignment).

9. Who was the RMO(s) CC, Thomas notified of his medical condition?

10/16/03         Cert. No. 7003 1680 0001 2464 6187                              cont.
Cert. No. 7003 1680 0001 2464 6170
EEOC NO. 100-A3-8242X, Agency No. 4-K-220-0064-02
Re: Discovery

## Issue No.s 4, 5, 6

1. What are/were the procedure(s)/bylaws and forms related by the USPS, pertaining to all
    Leave for the year 2002, to include Leave Without Pay(LWOP)? (Please include all
documentation)

2. What Leave(s) ie. sick, annual etc. did CC, Thomas notify RMO(s), of all absence(s) through
    July 3, 2002? (Explain in detail/provide all documentation RMO(s) to include all clock
    rings taken when notified of absences)

3. Who was the RMO(s) notified by CC, Thomas' in writing or otherwise to all absences through
    July 3, 2002 ? (Explain in detail/provide all documentation)

4. Who was the RMO(s) who placed CC, Thomas on LWOP ? (Explain in detail/provide all
    documentation/actions of who placed CC, Thomas on LWOP)

5. Why was CC, Thomas Placed on LWOP? (Explain in detail/provide documentation)

6. Was CC, Thomas offered an alternative work or duty assignment by RMO(s) due to his
    absences/medical illness (Stress) through July 3, 2003? (Explain in detail/provide all
documentation/actions RMO(s) took when CC, Thomas was offered alternative work or duty
 assignment)

7. When was CC, Thomas placed on LWOP? (Explain in detail/provide all documentation
    pertaining to CC, Thomas being placed on LWOP)

## Issue No. 7

1. Is the same questions as 1, in Issue No. 1, 2 3

2. What was the Act. Vol., the time CC, Thomas entered a STM and all clock rings for August 1,
    2, 3, 2002? (Please provide all documentation)

3. Was CC. Thomas on the ODL August 1, 2, 3, 2002?

4. When or did CC, Thomas notify RMO(s) that Rt. 1038 was out of adjustment? ( If so, Explain
    in detail/provide all documentation/actions by RMO(s) took when informed about the out of
    adjusted Rt. 1038)

2

10/16/03         Cert. No. 7001 1680 0001 2404 6178

EEOC No. 100-A3-8247

Agency No. 4-K-220-0064-02

Cert. No. 7003 1680 0001 2464 6170

5. Which RMO(s) disapproved CC, Thomas for overtime on August 1, 2, 3, 2002? (Please provide all documentation)

6. Were the RMO(s) notified/had prior knowledge of CC, Thomas' medical condition (Stress) on August 1, 2, 3, 2002? (if so, provide all documentation)

7. CC, Thomas notified the EEOC and RMO(s) Huntley and Autrey that there was witnesses (co-workers) to the harassment on August 1, 2, 3 2002. Were there witnesses to RMO(s) actions on August 1, 2, 3?

8. Who were the witnesses/co-workers?

9. Were these witnesses questioned by RMO(s) about the, on the work room floor allegations of harassment for August 1, 2, 3, 2002? (If so, or not, explain in detail, provide all documentation and statements)

#### By Fax & Certified Mail to:

Management
Arlington Main P.O.
Arlington VA 22201
Cert. No. 7003 1680 0001 2464 6163

Thomas J. Marshall, Managing Counsel
Capitol Metro Law Office
U.S. Postal Service
Fax: (202) 314-6820
Cert. No. 7003 1680 0001 2464 6170

Simon Banks, ALJ - Mail/Fax: 10/07/03
P.O. Box 17052
Alexandria VA 22303-8752

Rebecca Dickinson, Administrative Judge
1400 L Street, N. W., Suite 200
Washington, D. C. 20005

Fax: (703) 575-8489
1680 0001 2464 6187

Cert. No. 7003

Cert. No. 7001 1140 0001 7788 4382

Marco Thomas
City Carrier